UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**G.M., on behalf of her minor child B.M.,**
      Plaintiffs,

vs.                                     No. 1:13-cv-00049-JAP/KBM

**BERNALILLO COUNTY SHERIFF**
**SCHOOL RESOURCE OFFICER CASALDUC,**
      Defendant.

### MEMORANDUM ORDER AND OPINION

On July 8, 2013, Plaintiff G.M., on behalf of her minor child B.M., moved for partial summary judgment. *See* PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY DEFENSE AND SUMMARY JUDGMENT ON PLAINTIFF'S WRONGFUL ARREST CLAIM (Doc. No. 29) ("Plaintiff's MSJ"). Plaintiff asks the Court to grant summary judgment on Plaintiff's wrongful arrest claim and to determine that Defendant Bernalillo County Sheriff School Resource Officer Casalduc ("Officer Casalduc") is not entitled to qualified immunity. Defendant filed three cross-motions for summary judgment. *See* DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. I: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT WRONGFUL ARREST CLAIM BASED ON QUALIFIED IMMUNITY (Doc. No. 47) ("Defendant's Wrongful Arrest MSJ"); DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. II: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT EXCESSIVE FORCE CLAIM BASED ON QUALIFIED IMMUNITY (Doc. No. 49) ("Defendant's Excessive Force MSJ"); DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. III: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT UNLAWFUL SEARCH CLAIM

BASED ON QUALIFIED IMMUNITY (Doc. No. 59) ("Defendant's Unlawful Search MSJ")
(collectively "Defendant's MSJs"). Defendant asserts qualified immunity and seeks a dismissal
of Plaintiff's wrongful arrest claim, excessive force claim, and unlawful search claim. Because
Defendant is entitled to qualified immunity, the Court will deny Plaintiff's MSJ and will grant
Defendant's MSJs.

## BACKGROUND

### A.  The Parties

On April 18, 2011, B.M. was a fourteen-year-old eighth-grade student at Harrison Middle
School ("HMS") in Albuquerque, New Mexico. Incident Report by Officer Casalduc, Exhibit 1
to Plaintiff's MSJ (Doc. No. 29-1) ("Incident Report"). Defendant Bernalillo County Sheriff
School Resource Officer Casalduc ("Officer Casalduc") worked at HMS as a School Resource
Officer ("SRO"). Affidavit of School Resource Officer Ray Casalduc, Exhibit F to Defendant's
Wrongful Arrest MSJ (Doc. No. 47-6) ("Casalduc Affidavit") at ¶¶ 1, 6. Defendant began
working at HMS in 2009, after retiring from the Albuquerque Police Department in 2007. *Id.* ¶¶
2, 3. During the time Officer Casalduc worked at HMS he developed a "good working
relationship" with HMS Dean of Students Mark O'Gawa ("Dean O'Gawa") and with HMS Head
Counselor Jo Ann Woolsey ("Counselor Woolsey"). *Id.* ¶ 14; Deposition of Jo Ann Woolsey,
Exhibit B to Defendant's Wrongful Arrest MSJ (Doc. No. 47-2) ("Woolsey Deposition") at 14:3-
5. According to Counselor Woolsey, Officer Casalduc was "very approachable" and fair.
Woolsey Deposition at 14:8.

### B.  School Policies on Cell Phones

HMS policy prohibited students from using cell phones or having them out during
instructional time. *Id.* at 16:9-15. HMS defined instructional time as "time when a teacher is

slotted to teach." *Id.* at 16:24-25. If a student violated the policy, HMS practice dictated that the phone be confiscated, turned over to the school secretary, logged, and stored in a locked room. *Id.* at 17:20-18:1, 22:5-14. HMS would release the confiscated cell phone only to a parent or guardian. *Id.* at 22:15-17.

The HMS cell phone policy accorded with Albuquerque Public School ("APS") policy, which required phones to be "kept out of sight and powered off or silenced during the school day." Student Acceptable Use of Personal Electronic Devices, Exhibit D to Defendant's Wrongful Arrest MSJ (Doc. No. 47-4). APS policy authorized school staff to confiscate cell phones used in violation of school policy and directed schools to develop "internal procedures for staff concerning confiscation" of cell phones. *Id.* APS policy was available online. *See id.*

### C.  The April 18, 2011 Incident

On April 18, 2011, Dean O'Gawa contacted Officer Casalduc. Casalduc Affidavit ¶ 7. Dean O'Gawa informed Officer Casalduc that a student, B.M., had been texting in class. B.M. refused multiple requests by her teacher to stop texting and turn over her phone as required by school policy. As a result of B.M.'s refusal, her teacher stopped class to address B.M.'s behavior. Eventually, B.M.'s teacher summoned Dean O'Gawa to the classroom. *Id.* ¶¶ 9-11. Dean O'Gawa removed B.M. from class and brought her to the head administrative offices of HMS. *See id.* ¶ 12. In the administrative offices, B.M. ignored requests by Dean O'Gawa and Counselor Woolsey to relinquish her phone. *Id.*

Dean O'Gawa relayed the above information to Officer Casalduc and asked for his assistance. *Id.* ¶ 13. Officer Casalduc accompanied Dean O'Gawa to Counselor Woolsey's office, where B.M. was sitting. *Id.* ¶¶ 16, 18. Officer Casalduc first spoke with Counselor Woolsey, who confirmed the information reported by Dean O'Gawa. *Id.* ¶¶ 16-17. Next, Officer

Casalduc observed B.M. She had her feet on the chair and her arms locked around her knees in a squat position. She was rocking back and forth. A cell phone protruded from her back pocket. *Id.* ¶ 18.

Officer Casalduc introduced himself to B.M. and explained that she was required to provide her cell phone to Counselor Woolsey. B.M. refused to make eye contact and did not respond to Officer Casalduc. *Id.* ¶¶ 19-20. Officer Casalduc told B.M. that her conduct was disruptive because she prevented her teacher from instructing the class, interfered with Dean O'Gawa's and Counselor Woolsey's ability to be available to other students, and violated HMS school policy. *Id.* ¶¶ 21-23. Officer Casalduc explained NMSA § 30-20-13 (D) and informed B.M. that she was violating the statute by texting in class and refusing to turn over her cell phone. *Id.* ¶¶ 24-25. NMSA § 30-20-13 (D) criminalizes acts that disrupt, impair, interfere with, or obstruct school functions.

Officer Casalduc told B.M. that he would not arrest her if she agreed to relinquish the phone. *Id.* ¶ 25. Then, Officer Casalduc asked B.M. to give the phone to Counselor Woolsey. After receiving no response to his request, Officer Casalduc provided a final warning; he told B.M. he would place her under arrest unless she gave the phone to Counselor Woolsey. B.M. continued to ignore Officer Casalduc, while refusing to make eye contact. *Id.* ¶¶ 26-27.

At that time, Officer Casalduc placed B.M. under arrest. *Id.* ¶ 30. Officer Casalduc asked B.M. to stand and place her hands behind her back. B.M. complied. *Id.* He then instructed Counselor Woolsey to remove the cell phone from B.M.'s back pocket. *Id.*

After handcuffing B.M., Officer Casalduc tested for finger space between each cuff and each wrist. He "took care" that her wrists could move freely within the cuffs. *Id.* ¶ 32. He double locked each cuff to prevent the cuffs from further tightening. B.M. did not complain or otherwise

4

indicate that the handcuffs were uncomfortable. *Id.* After transporting B.M. to the Juvenile

Detention Center, Officer Casalduc inspected B.M.'s wrists; he did not notice any bruises or

marks on her arms, wrists, or hands. *Id.*

### D.  Procedural History

On December 5, 2011, Plaintiff filed A COMPLAINT FOR RECOVERY OF

DAMAGES DUE TO DEPRIVATION OF CIVIL RIGHTS. *See* Exhibit A to NOTICE OF

REMOVAL (Doc. No. 1-2) ("Complaint"). In the Complaint, Plaintiff asserts one claim under

42 U.S.C. § 1983 for unlawful arrest, excessive force, and unlawful search in violation of B.M.'s

Fourth Amendment rights. *See id.* at 3. The Complaint also cites New Mexico Constitution, Art.

XII, § I and NMSA 1978 § 22-1-4, but the Complaint does not assert a claim under state law.

## DISCUSSION

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a party may receive summary judgment if

that party "shows that there is no genuine dispute as to any material fact and [the party] is

entitled to judgment as a matter of law." When both parties move for summary judgment, the

court must analyze each motion individually and on its own merits. See *Buell Cabinet Co. v.

Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (explaining that "[c]ross-motions for summary

judgment are to be treated separately; the denial of one does not require the grant of another.").

"Cross-motions for summary judgments, however, do authorize a court to assume that there is no

evidence which needs to be considered other than that which has been filed by the parties."

*Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1223 (D.N.M. 2012) (citing *Buell

Cabinet Co.*, 608 F.2d at 433; *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir.

1981)). "Where the facts are not in dispute and the parties only disagree about whether the

actions were constitutional, summary disposition is appropriate." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (citing FED. R. CIV. P. 56(c)).

### B.  Qualified Immunity Defense

Qualified immunity protects law enforcement officials who are required to exercise their discretion by shielding them from liability for harm caused by reasonable mistakes. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of defendant's conduct. *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

Under Supreme Court and Tenth Circuit decisions, a law is not clearly established unless existing precedent places the right in question "beyond debate." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).  Nonetheless, qualified immunity analysis is not a "scavenger hunt for prior cases with precisely the same facts." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). To prevail against a defendant's assertion of qualified immunity, the plaintiff need not identify a case holding the exact conduct in question unlawful.  The focus is whether the law at the time of the defendant's conduct provided the defendant with "fair notice" regarding the legality of his conduct. *Id.*

It is well established that qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Herrera*, 589 F.3d at 1070 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). An officer is

not liable for a reasonable mistake, whether it be a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Id.*

The Court maintains the discretion to address either prong of the qualified immunity analysis first. *Courtney*, 722 F.3d at 1222.

## 1. Wrongful Arrest

Plaintiff alleges that Officer Casalduc arrested B.M., without probable cause, for violating NMSA § 30-20-13 (D). To overcome Defendant's assertion of qualified immunity, Plaintiff must show that (1) Officer Casalduc arrested B.M. without probable cause, thereby violating the Fourth Amendment,[1] and (2) it would have been clear to a reasonable officer in Officer Casalduc's position that probable cause was lacking and that the resulting arrest was unlawful. Probable cause exists if "acts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Keylon v.*

---

[1] In PLAINTIFF'S RESPONSE TO DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. I: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT WRONGFUL ARREST CLAIM BASED ON QUALIFIED IMMUNITY (Doc. No. 57), Plaintiff argues that a New Mexico warrantless misdemeanor arrest must be justified by exigency. Under the New Mexico constitution, "probable cause that a non-jailable offense has been committed does not automatically make arrest reasonable . . . for such arrests to be reasonable, there must be specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the additional intrusion of a full custodial arrest." *State v. Rodarte*, 138 N.M. 668, 672 (N.M. Ct. App. 2005). However, Plaintiff alleges no state law claims.

As *Rodarte* indicates, the protections afforded by the New Mexico constitution are "significantly greater" than the protections afforded by the Fourth Amendment of the United States Constitution. *Id.* at 671. Under the Fourth Amendment, the probable cause standard applies to all arrests; an arrest may occur if an officer has probable cause to believe an individual committed even a "very minor" criminal offense. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "[W]hile States are free to regulate . . . arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Section 1983 does not provide "a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988). To establish her Fourth Amendment claim, Plaintiff must show that the challenged arrest occurred without probable cause.

*City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) (citing *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)).

In the context of an unlawful arrest, the two prongs of the qualified immunity analysis sound similar – the plaintiff must show that (1) the officer lacked probable cause, i.e. the facts would not lead a reasonable officer to believe a crime was being committed, and (2) it would be clear to a reasonable officer that probable cause was lacking – but each poses a distinct inquiry.

Under the second prong, an officer is not liable for an unlawful arrest if he "reasonably but mistakenly" concludes that probable cause exists. *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1120 & n.15 (10th Cir. 2007) (en banc)); *see, e.g.*, *Herrera*, 589 F.3d at 1070-71, 1073 (holding that an officer was entitled to qualified immunity on a wrongful arrest claim even though there was no probable cause to arrest the plaintiff). An officer's reasonable but mistaken belief that probable cause exists is sometimes called "arguable probable cause." *Koch*, 660 F.3d at 1241.

Plaintiff argues that Officer Casalduc lacked probable cause to arrest B.M., therefore, the Court must conclude Officer Casalduc is not entitled to qualified immunity. PLAINTIFF'S RESPONSE TO DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. I: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT WRONGFUL ARREST CLAIM BASED ON QUALIFIED IMMUNITY (Doc. No. 57) at 6. Plaintiff confuses the two prongs of the qualified immunity analysis. As a general matter, it is clearly established that a government official must have probable cause to arrest an individual. *Keylon*, 535 F.3d at 1220. Nonetheless, if arguable probable cause exists, the plaintiff has failed to show that the constitutional right was clearly established in the situation facing the defendant. *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) ("Our inquiry into whether a constitutional right was

clearly established must be undertaken in light of the specific context of the case, not as a broad

general proposition.") (quoting *Cortez*, 478 F.3d at 1114 ). Consequently, in an unlawful arrest

case, an officer's qualified immunity hinges on the objective reasonableness of the officer's

probable cause determination.

Determining whether an officer reasonably believed probable cause existed necessitates

considering the scope of the state law relied upon by the officer in effecting the arrest. *See*

*Fogarty v. Gallegos*, 523 F.3d 1147, 1159 (10th Cir. 2008) (denying an officer's assertion of

qualified immunity because the officer's arrest was clearly outside the scope of the New Mexico

disorderly conduct statute relied upon by the officer to make the arrest); *Keylon*, 535 F.3d at

1220 (denying an officer qualified immunity because the arrest was clearly outside the scope of

the New Mexico statute relied upon by the officer). If the parties agree about the facts

surrounding the arrest, the issue is narrow: did the officer reasonably apply the criminal law to

the facts? *Herrera*, 589 F.3d at 1071. Unless the state criminal statute is clearly inapplicable – by

virtue of its language or by virtue of case law interpreting the statute – to the facts confronting

the officer, the officer is entitled to qualified immunity. *See id.*; *see also Sorenson v. Ferrie*, 134

F.3d 325, 328 (5th Cir. Tex. 1998) ("Particularly in situations where--as here--the statutory

language [of the criminal law]  is vague, the case law must draw a bright line in order for the law

to be classified as "clearly established.'").

Here, Officer Casalduc arrested B.M. for "willfully interfer[ing] with the educational

process . . . by committing, threatening to commit or inciting others to commit any act which

would disrupt, impair, interfere with or obstruct the lawful mission, processes, procedures or

functions of a public or private school." NMSA § 30-20-13 (D). B.M.'s conduct does not clearly

fall outside the conduct prohibited by the plain language of the statue. B.M. ignored numerous

requests to stop texting during class in violation of HMS policy. Unable to continue instruction, her teacher stopped class and eventually summoned Dean O'Gawa. After being removed from class, B.M. continued refusing to hand over her cell phone as required by school procedure.

Plaintiff argues that no reasonable officer would conclude that B.M. acted "willfully." PLAINTIFF'S RESPONSE TO DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. I: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT WRONGFUL ARREST CLAIM BASED ON QUALIFIED IMMUNITY (Doc. No. 57). New Mexico case law defines criminal willfulness as connoting knowledge or as acting "without just cause or lawful excuse." *State v. Elliott*, 131 N.M. 390, 395 (N.M. Ct. App. 2001); *State v. Elmquist*, 114 N.M. 551, 552 (N.M. Ct. App. 1992) (equating willfulness and intention; an individual acts willfully when he is aware of what he is doing). Given the repeated warnings provided to B.M., a reasonable officer could conclude that she knowingly and without just cause disrupted school functions and interfered with school procedures. Officer Casalduc informed B.M. that she was violating NMSA § 30-20-13 (D) and gave her an opportunity to comply with school procedures in order to avoid arrest.

Only one New Mexico case construes the plain language of NMSA § 30-20-13 (D). *See State v. Silva*, 86 N.M. 543 (N.M. Ct. App. 1974) (interpreting NMSA 1953 § 40A-20-10, a precursor to NMSA § 30-20-13). In *Silva*, police arrested nonviolent student protestors at Eastern New Mexico University. The students were arrested after refusing multiple requests to leave the office of the university president. *Id.* at 544, 548. In the process of considering several constitutional challenges to the statute, the Court defined activity that "impairs" the functions of a school as behavior causing "a substantial physical diminution or damage and not just any diminution in quality." *Id.* at 547. Nonetheless, it upheld the students' convictions on the grounds

that the students "substantially interfered" with school functions by refusing to leave the president's office when he had scheduled meetings. *Id.* at 548.

Assuming that a reasonable officer would be aware of *Silva*, a case from almost forty years ago interpreting a precursor statute, the Court finds that a reasonable officer could conclude that B.M.'s conduct substantially interfered with school functions.  Like the students in *Silva*, B.M. refused to comply with the requests of school administrators. Her actions interfered with the ability of HMS employees to be available to other students. Plaintiff argues that HMS officials should have responded to her behavior by taking school-related disciplinary action, such as removal from class or suspension. In *Silva*, the Court rejected a similar argument.  There, the students argued that the president could have moved his meetings to accommodate their nonviolent protest. The Court held that while "patient forbearance" of student misconduct may be wise, it is not legally required. *Id.*

In contrast, *Fogarty* and *Keylon* provide two examples of officers arresting individuals in violation of clearly established New Mexico law. In *Keylon*, the officer arrested the plaintiff after the plaintiff told him she did not know her son's address or birthday. *Keylon*, 535 F.3d at 1213. To justify the arrest, the officer cited a New Mexico law criminalizing "resisting, evading or obstructing" an officer. *Id.* at 1216. Under New Mexico law, "resisting, evading or obstructing" an officer generally requires a physical act of resistance; mere words are not normally sufficient to violate the law. There is one exception; the law criminalizes "fighting words," which are words that tend to incite an immediate breach of the peace. *Id.* at 1216-17 (quoting *State v. Wade*, 100 N.M.152 (N.M. Ct. App. 1983)). According to the Tenth Circuit, the plaintiff's statement that she did not know her son's address or birthday was clearly not "fighting words." *See id.* at 1220 ("no reasonable person in [defendant's] position could have thought he had

probable cause to arrest [plaintiff]"). Therefore, the Court held that the officer was not entitled to qualified immunity. *Id.*

In *Fogarty*, police arrested a nonviolent antiwar protestor for disorderly conduct. *Fogarty*, 523 F.3d at 1150, 1156. The plaintiff admitted to drumming at the protest, but the officers present at the protest did not personally observe the drumming. *Id.* at 1157, 1158 n. 10. Under New Mexico law, disorderly conduct requires "an act of violence, or . . . an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *Id.* at 1156 (quoting *State v. Florstedt*, 77 N.M. 47 (1966)). Mere expression, no matter how loud or offensive to bystanders, is insufficient to support a charge of disorderly conduct absent a showing that it is likely to incite listeners to breach the peace. *Id.* at 1157 (quoting *State v. Hawkins*, 128 N.M. 245 (N.M. Ct. App. 1999)). After applying these principles to the plaintiff's conduct, the Tenth Circuit concluded that New Mexico law provided the officers with fair notice that drumming, in and of itself, is not disorderly conduct. As a result, the Court affirmed the district court decision to deny the officers qualified immunity. *Id.* at 1159.

In *Fogarty* and *Keylon*, the plaintiffs identified New Mexico case law clearly limiting the plain language of the statue relied upon by the police. For both statutes, the New Mexico courts had provided stringent guidelines outlining when an officer could arrest a citizen based on the citizen's speech or expression. The Tenth Circuit characterized New Mexico law as "clear," "unambiguous," and "well-settled." *Fogarty*, 523 F.3d at *1159, Keylon*, 535 F.3d at 1220.

To the contrary, New Mexico case law interpreting NMSA § 30-20-13 is sparse. *Silva*, the one relevant New Mexico case, arguably supports Officer Casalduc's decision to arrest B.M. *Silva* affirmed the conviction of nonviolent student protestors for refusing to leave the university president's office. Plaintiff interfered with the functioning of HMS in much the same way as

12

these nonviolent protestors; she interrupted class and threatened to keep HMS administrators from other duties for an indefinite period of time. Moreover, B.M.'s resistance, even if passive, directly violated school procedures.

Plaintiff argues that Florida and North Carolina case law interpreting statutes similar to NMSA § 30-20-13 clearly establish that B.M.'s conduct did not violate NMSA § 30-20-13. *See* Plaintiff's MSJ at 3-5 (citing, for example, *S.L. v. State*, 96 So. 3d 1080 (Fla. Dist. Ct. App. 3d Dist. 2012) (reasoning that a middle school student did not unlawfully interfere with the functioning of the school by shouting out obscenities, making rude gestures, running from school security, and generally acting unruly because there was no evidence that the child intended to stop or impede school activities); *In re S.M.*, 190 N.C. App. 579 (N.C. Ct. App. 2008) (holding that two school children did not unlawfully disrupt school by giggling and running the hallways)). Florida and North Carolina case law do not change the Court's decision. At best Florida and North Carolina case law provide persuasive authority for how a New Mexico court might interpret NMSA § 30-20-13. Case law from other states cannot provide fair notice regarding New Mexico law to a New Mexico officer.

Neither the plain language of NMSA § 30-20-13 nor New Mexico case law provides notice to a reasonable officer that there was no probable cause to arrest B.M. Defendant is entitled to qualified immunity from the claim for wrongful arrest. Because the Court finds that B.M.'s right to be free from arrest was not clearly established, the Court will not reach the issue of whether probable cause existed for the arrest.

### 2. Excessive Force

Plaintiff alleges that Officer Casalduc used excessive force arresting B.M. To prevail against Defendant's assertion of qualified immunity, Plaintiff must show that (1) Officer

13

Casalduc used excessive force during the course of the arrest in violation of the Fourth

Amendment, and (2) it would have been clear to a reasonable officer that the force exercised by

Officer Casalduc was excessive and unconstitutional.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to

use some degree of physical coercion or threat." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

However, the Fourth Amendment prohibits an arresting officer from using force greater than

necessary under the circumstances. *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).

The force employed during an arrest is excessive if it is objectively unreasonable. *Graham,* 490

U.S. at 397. Three non-exclusive factors guide the reasonableness analysis: the severity of the

crime, the level of threat posed by the suspect to officer and public safety, and the amount of

resistance to or compliance with arrest exhibited by the suspect. *Id.* at 396. Ultimately, the Court

must determine whether the totality of the circumstances justify the challenged use of force. *Id.*

Plaintiff, G.M., rests her excessive force claim on the handcuffing and transportation of

B.M. to the Juvenile Detention Center. She argues that "any restraint of B.M.'s liberty was

completely unnecessary." PLAINTIFF'S RESPONSE TO DEFENDANT CASALDUC'S

MOTION FOR PARTIAL SUMMARY JUDGMENT NO. II: DISMISSAL OF PLAINTIFF'S

FOURTH AMENDMENT EXCESSIVE FORCE CLAIM BASED ON QUALIFIED

IMMUNITY (Doc. No. 63) at 14.

Plaintiff's arguments are unavailing; handcuffing is appropriate in "nearly every situation

where an arrest is authorized." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009).

Plaintiff cites, and the Court is aware of, no case that exempts minors from this general rule. To

the contrary, courts that have addressed a claim of excessive force arising from the arrest of a

minor have not treated the age of the arrestee as a factor that can transform an otherwise

reasonable use of force into a constitutional violation. *See e.g.*, *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) (applying the general rule that "the handcuffing of a person in the course of an otherwise lawful arrest fails, as a matter of law, to state a claim for excessive force" to the handcuffing of a seventh-grade student); *Gandy v. Panama City*, 505 F.2d 630 (5th Cir. 1974) (holding that an officer did not use excessive force when he handcuffed and transported a 15-year-old boy to the city police station for motorcycle traffic offenses), *Jeffrey v. Ratchner*, No. Civ. 01-349 WWS/LCS, slip op. at 24 (D.N.M. October 25, 2012) (handcuffing a 14-year-old girl who was suspected of committing an armed robbery during the course of an arrest was reasonable under *Graham*).

      Until the moment of arrest, B.M. repeatedly refused to comply with Officer Casalduc. Throughout Officer Casalduc's attempt to converse with B.M., she sat with her arms around her knees, rocking and resisting eye contact. While the crime B.M. allegedly committed was not severe and B.M. did not resist arrest, a reasonable officer could have been concerned that handcuffs were necessary to protect against unexpected behavior. The force used by Officer Casalduc was minimal and not unreasonable under the totality of the circumstances. *See Rucker v. Hampton*, 49 Fed. Appx. 806, 809 (10th Cir. 2002) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9) (1985)) (unpublished) ("[A]n assessment of the degree of force actually used is critical to the balancing test used to determine if the force was excessive.").

      Plaintiff argues that Officer Casalduc's use of force was excessive because New Mexico law counsels against arrest in the circumstances Officer Casalduc faced. The Court recognizes that compliance with state law may be relevant to whether police conduct was reasonable under the Fourth Amendment. *See United States v. Sawyer*, 441 F.3d 890, 897 (10th Cir. 2006). However, it is not clear that Officer Casalduc violated New Mexico law. New Mexico law

permits an officer to take into custody a child who commits a "delinquent act," which is "an act committed by a child that would be designated as a crime under the law if committed by an adult." NMSA § 32A-2-9, 32A-2-3. Once a child is taken into custody, an officer has six options, one of which is to deliver the child to a detention facility certified by the Children, Youth and Families Department. NMSA § 32A-2-10, 32A-2-12, 32A-1-4. There is no evidence in the record to suggest that the Juvenile Detention Center is not a certified detention facility. Plaintiff proposes that Officer Casalduc should have transported B.M. to the Reception and Assessment Center, an alternative facility for at-risk youth. However, the Bernalillo County Sheriff's Department Rules and Regulations clearly state that use of the Reception and Assessment Center is "solely discretionary on the deputy's part." (Doc. No. 64-1).

The Court's application of the *Graham* factors is consistent with the Tenth Circuit's insistence that wrongful arrest and excessive force are distinct and independent claims, even when they arise from a single encounter. *Cortez*, 478 F.3d at 1127. A court must separately consider an officer's justification for the arrest and the degree of force exercised by the officer during the arrest. *Id.* Plaintiff's position conflates the excessive force and the unlawful arrest claim. By arguing that "no force was necessary" under the circumstances, Plaintiff effectively claims that the arrest itself, which was properly implemented, was unlawful. *See* Complaint ¶ 29. If the mere act of handcuffing an arrestee constituted excessive force, police ability to execute an arrest using "some degree of physical coercion" would be impeded. *See Graham*, 490 U.S. at 396.

Even if the mere act of handcuffing B.M. could be considered excessive because B.M. was a minor, Officer Casalduc would be entitled to qualified immunity. No Tenth Circuit opinion indicates that police officers need special justification to handcuff a minor during the course of

an arrest. The law does not provide a reasonable officer with fair notice that the generally approved practice of handcuffing an arrestee is unconstitutional if the arrestee is 14-years-old.

An excessive force claim may be based on the form or manner of handcuffing, but Plaintiff does not allege such a claim. Even if Plaintiff did, the Court would find that Plaintiff failed to state a viable excessive force claim. The Tenth Circuit has promulgated special rules for tight handcuffing cases. To recover the plaintiff must show "some actual injury caused by the unreasonable seizure that is not de minimis." *Cortez*, 478 F.3d at 1127 n. 25. The plaintiff's injury may be physical or emotional. *Id.* In addition, unduly tight handcuffing may fail to rise to the level of excessive force if the plaintiff did not complain about the handcuffs and the officer was not otherwise aware that the handcuffs were too tight. *Id* at 1129. Plaintiff presents no evidence that B.M. suffered actual injury that is more than de minimis and cannot prevail on a claim for excessively tight handcuffing.

### 3. Unlawful Search and Seizure

Plaintiff alleges that Officer Casalduc unlawfully searched B.M. by instructing Counselor Woolsey to remove the cell phone from B.M.'s pocket after B.M. was placed under arrest. To the extent that removing a cell phone that was subject to confiscation as a matter of school policy and was visibly protruding from a student's pocket can constitute a search, the search was not unconstitutional under clearly established law. First, "a search incident to . . . arrest requires no additional justification" to be lawful. *Virginia v. Moore*, 553 U.S. 164, 177 (2008). Second, it is not clear under established law that it is unreasonable for a SRO to seize a contraband item that is in a student's possession.

Plaintiff attempts to avoid both conclusions. First, Plaintiff contends that the removal of the cell phone was not a valid search incident to arrest, because its purpose was not to secure

officer safety or to obtain evidence. As Plaintiff correctly notes, the Supreme Court has excepted searches incident to arrest from the basic rule that warrantless searches are generally unreasonable under the Fourth Amendment. The search incident to arrest exception "derives from interests in officer safety and evidence preservation," *Arizona v. Gant*, 556 U.S. 332, 338 (2009), but the Supreme Court has not actively limited searches of the person of an arrestee based on these interests. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) (approving the search of an individual arrested for driving with a revoked license because it is appropriate to "treat[] all custodial arrests alike for purposes of search justification").

Instead, the Supreme Court has declared that "[t]he interests justifying search are present whenever an officer makes an arrest." *Virginia*, 553 U.S. at 177 (upholding the search of an individual arrested for driving with a suspended license). "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.* Accordingly, the search incident to arrest exception is often stated as a blanket rule: "a police officer, incident to an arrest, may search a person . . ." *Lavicky v. Burnett*, 758 F.2d 468, 474 (10th Cir. 1985); *see also Robinson*, 414 U.S. at 224 ("a search may be made of the person of the arrestee by virtue of the lawful arrest. . . [t]he validity of the search of a person incident to a lawful arrest has been regarded as settled from its first enunciation").

While *Gant* arguably supports Plaintiff's contention that a search of an arrestee's person is prohibited unless "genuine safety or evidentiary concerns exist," *Gant*, 556 U.S. at 347, Officer Casalduc asserts qualified immunity and is entitled to its protection as long as the law regulating searches of an arrestee's person does not clearly prohibit his actions. This is not the case. Valid Supreme Court precedent strongly suggests that an officer may search the person of

18

an arrestee no matter what the purpose. Because the alleged search involved the removal of a cell phone from B.M.'s person, Officer Casalduc reasonably concluded that his conduct constituted a valid search incident to arrest.

Second, and apart from the arrest, Officer Casalduc is entitled to qualified immunity because officials enjoy greater latitude to conduct searches at schools. The Supreme Court has modified "the level of suspicion of illicit activity needed to justify a search" in the school setting. *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 370 (2009). A school official may search a student without probable cause, as long as the search is reasonable under the circumstances. *N.J. v. T. L. O.*, 469 U.S. 325, 340 (1985).[2] It is certainly reasonable for a school official to confiscate a student's cell phone, as required by school policy, when that cell phone is being used during the school day in violation of school rules. *See Redding*, 557 U.S. at 373 (finding it reasonable for school officials to search the outer clothing of a student suspected of possessing common pain relievers in violation of school policy). HMS policy required school personnel to confiscate B.M.'s phone; therefore, it was reasonable for Officer Casalduc to believe his conduct was lawful.

In fact, Plaintiff agrees that a school official may remove a cell phone from a student's back pocket without violating the constitution, PLAINTIFF'S RESPONSE TO DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. III: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT UNLAWFUL SEARCH CLAIM BASED ON QUALIFIED IMMUNITY (Doc. No. 65) at 15 ("There is no question that an administrative search and seizure by Administrator Woolsey, outside the coercive presence of an officer in full

---

[2] The Tenth Circuit applies the same standard to seizures of student property in the school setting. *Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989).

uniform, would have been valid under <u>Stafford</u> (sic).”). Instead, Plaintiff argues that the reasonableness standard announced in *T.L.O.*, and applied in *Safford*, does not govern Officer Casalduc’s conduct because Officer Casalduc is not a school official.

Despite Plaintiff’s arguments, it is not clearly established that an otherwise reasonable school seizure is unconstitutional when conducted with help from a school resource officer. First, the Supreme Court’s reasoning in *T.L.O.* arguably extends to a search conducted by a school resource officer with school officials.[3] The relaxed standard applied to school searches represents a careful balancing of the government interest in creating an environment where learning can occur and the school child’s interest in privacy. The reasonableness standard allows courts to recognize that “maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures.” *T.L.O.*, 469 U.S. at 340.

Second, at least two cases in the Tenth Circuit and a New Mexico Court of Appeals case indicate that a school resource officer should be treated as a school official when acting to protect school security or enforce school policy. *In the Matter of Josue T.*, 128 N.M. 56, 62 (N.M. Ct. App. 1999) (the relaxed standard for school searches applies when a school resource officer searches a student “in conjunction with school officials and in furtherance of the school’s objective to maintain a safe and proper educational environment”); *S.S. v. Turner Unified Sch. Dist.*, 2012 WL 6561525, at *1, *4-5 (D. Kan. Dec. 14, 2012) (analyzing the search of a student which was conducted by a school resource officer at the request of a school official under the

---

[3] In *N.J. v. T.L.O.*, the Supreme Court refrained from determining the appropriate standard for searches conjointly executed by school officials and law enforcement. *Id.* at 342 n. 7 (“We here consider only searches carried out by school authorities acting alone and on their own authority. This case does not present the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, and we express no opinion on that question.”).

reasonableness standard announced in *T.L.O.*); *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 245 F. Supp. 2d 1188, 1199 (D.N.M. 2002) (approving a search of a student's car conducted by two school security guards because "school resource officers, as well as school officials, only require the reasonable suspicion" to search students).

Third, at least one other district court has found that the law in this area is not clear. *See James v. Unified Sch. Dist. No. 512*, 959 F. Supp. 1407, 1414-15 (D. Kan. 1997) (finding that a school resource officer who participated in the search of a student's vehicle was entitled to qualified immunity because the law concerning school searches undertaken with police assistance is not clearly established).

As in *Josue*, *Turner*, and *Butler*, Officer Casalduc searched B.M. "during school hours on school grounds, in furtherance of the school's education-related goals." *In the Matter of Josue T.*, 128 N.M. at 61. He became involved with B.M. at the request of HMS officials and directed Counselor Woolsey to remove B.M.'s cell phone after several HMS administrators asked B.M. to relinquish the phone. Given the facts, it was reasonable for him to conclude that directing school administrators to confiscate B.M.'s phone was a reasonable school seizure.

Plaintiff cites *Jones v. Hunt*, 410 F.3d 1221, 1228 (10th Cir. 2005), for the proposition that the *T.L.O.* standard does not apply to seizures on school property that are taken for law enforcement purposes unrelated to the security of the school. However, the *Jones* case did not involve school officials or a school resource officer. In *Jones*, the Tenth Circuit refused to apply *T.L.O.* to the conduct of two social workers who came to a school and accosted a student about her living situation. The case did not implicate the policy concerns that were addressed by *T.L.O.* and that are present in this case; unlike a school resource officer, the social workers were not working with school officials "to preserve order on school property." *Id.*

### C. Attorney's Fees and Costs

Defendant asks the Court to award attorney's fees and costs.  A motion for attorney's fees must be filed after the entry of judgment. D.N.M.LR-Civ. 54.5. The Court will not consider the request for attorney's fees at this time.

IT IS ORDERED THAT:

1. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY DEFENSE AND SUMMARY JUDGMENT ON PLAINTIFF'S WRONGFUL ARREST CLAIM (Doc. No. 29) is denied.

2. DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. I: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT WRONGFUL ARREST CLAIM BASED ON QUALIFIED IMMUNITY (Doc. No. 47) is granted.

3. DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. II: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT EXCESSIVE FORCE CLAIM BASED ON QUALIFIED IMMUNITY (Doc. No. 49) is granted.

4. DEFENDANT CASALDUC'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. III: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT UNLAWFUL SEARCH CLAIM BASED ON QUALIFIED IMMUNITY (Doc. No. 59) is granted.

_____

SENIOR UNITED STATES DISTRICT JUDGE